IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY WAYNE PERRY, JR.,

                    Petitioner,

    vs.

ANTHONY HEDGPETH, Warden,
Salinas Valley State Prison,

                Respondent.

Case No: 2:10-cv-00875-JKS

MEMORANDUM DECISION

Petitioner, Timothy Wayne Perry, Jr., a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Perry is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Salinas Valley State Prison, in Salinas, California.  Respondent has filed an answer, and Perry has filed a traverse.

PROCEDURAL HISTORY

On March 12, 2007, a jury convicted Timothy Wayne Perry of two counts of second degree robbery and one count of assault with a semiautomatic firearm.  The jury also found true gun-use enhancements as to all three counts.  The court found true two prior serious felony and prior strike allegations and sentenced Perry to a total prison term of 38 years, four months.

Perry's conviction and sentence were affirmed by the California Court of Appeal, First District, in a reasoned, unpublished decision on January 13, 2009.[1]  The California Supreme Court denied review on April 15, 2009.

Perry filed a petition for a writ of habeas corpus in the Superior Court of Solano County which was denied on September 17, 2009.  Perry then filed a petition for habeas corpus in the California Court of Appeal which denied the petition on November 13, 2009.  Perry's subsequent petition for review was denied on February 3, 2010, by the California Supreme Court.

On March 5, 2010, Perry timely filed a Petition for a Writ of Habeas Corpus in this Court.  In his Petition, Perry raises nine grounds for relief:

1.    His Sixth Amendment right to a fair trial was violated because Juror No. 12 stated that she would be positively biased;

2.    His trial counsel was ineffective for failing to object to Juror No. 12 after she informed the court she would be positively biased;

3.    The trial court abused its discretion by denying his motion to release the jurors' contact information to him;

4.    His right to a fair trial under California Rules of Court Standard 10.20 was violated by allowing Juror No. 12 to serve;

5.    Jurors violated the admonition not to discuss the case before deliberations;

6.    Juror No. 12 was actually biased against Perry;

7.    Juror No. 12 was implicitly biased against Perry;

---

[1]  *People v. Perry*, 2009 WL 74346 (Cal. App. Jan. 13, 2009).

8.    Ineffective assistance of appellate counsel, and;

9.    Juror No. 12 violated the jury instructions not to be biased against Perry.

   Respondent does contend that any of Perry's grounds for relief are unexhausted or

procedurally barred.

<u>STANDARD OF REVIEW</u>

   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[3]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[7]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]  Because state-court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

The Supreme Court recently underscored the magnitude of the deference required:

---

difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[14]

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[15] When there is no reasoned state court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the

---

[11] *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786-87 (emphasis added).

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] *Ylst*, 501 U.S. at 802-03.

[14] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[15] *Id*. 562 U.S. at ___, 131 S. Ct. at 785.

merits in the absence of any indication or state-law procedural principles to the contrary."[16]

"The presumption may be overcome when there is reason to think that some other explanation

for the state court's decision is more likely."[17]   Where the presumption applies, this Court must

perform an independent review of the record to ascertain whether the state court decision was

objectively unreasonable.[18]   In so doing, because it is not clear that it did not so do, the Court

presumes that the state court decision rested on federal grounds,[19] giving the presumed decision

the same deference as a reasoned decision.[20]   The scope of this review is for clear error of the

state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .   Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[21]

---

[16] *Id.*

[17] *Id.*

[18] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[19] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991);  *Harris v. Reed*, 489 U.S. 255, 263 (1989).

[20] *Richter*, 562 U.S. at ____, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[21] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[22]

## DISCUSSION

As noted above, Perry raises nine grounds for relief.  With the exception of his third ground, none of Perry's grounds were raised on direct appeal.  When Perry first raised the grounds in his petition for habeas corpus in the Solano County Superior Court, the court held that his claims were procedurally barred because he did not raise them on direct appeal. Normally, this would be enough to prevent this Court from hearing these claims, however, inexplicably, Respondent has failed to raise the procedural bar as an affirmative defense. Accordingly, it is deemed waived.[23]  Many of Perry's claims are either similar or duplicative; for purposes of clarity and continuity, this Court will group similar claims together.

### Juror Bias (Grounds 1, 4, 6, 7, 9)

Perry's first, fourth, sixth, seventh, and ninth grounds all center around the voir dire and the court's subsequent decision to empanel Juror No. 12.  Specifically, Perry claims that Juror No. 12 was biased and should not have been allowed to sit on the panel.  Unquestionably, the right to a trial before an unbiased jury is the foundation for, and touchstone of, a fair trial.[24] Even if only one juror is unduly biased or prejudiced, the defendant is denied this constitutional

---

[22] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)

[23] *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).  However, "[o]nce the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."  *Id.*

[24] *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

guarantee.[25]   The Supreme Court has also held that the identification of juror bias is a factual

finding concerning the juror's state of mind that is decidedly within the province of the trial

judge.[26]   The following exchange involving Juror No. 12 took place during voire dire:

> THE COURT: Good morning, folks.
> Everybody heard everything? Anything anybody needs to tell us?
> Yes, ma'am.
> JUROR NO. 12: I know quite a few people up there.
> THE COURT: Okay. And when you say "quite a few people up there," does
> that mean you're going to have problems being fair or you just know them?
> JUROR NO. 12: No, I'll be fair but - - -
> THE COURT: Right. You've been around a while and know probably just
> about everybody we've mentioned?
> JUROR NO. 12: Pretty much.
> THE COURT: Okay. Is there anything about what you do and your various
> relationships and your occupation which causes you to think you can't do the job of a
> juror and listen carefully to the evidence and decide what happened and reach a just
> verdict?
> JUROR NO. 12: I think I would be positively biased.
> THE COURT: "Positively biased" - - now explain that to me.
> JUROR NO. 12: Because I've worked with that young man.
> THE COURT: Okay. And so you don't think you could be fair to both sides;
> is that what you're saying?
> JUROR NO. 12: Oh, no. I can listen to the information and be fair to both
> sides.
> THE COURT: Okay. Well, that's what - - you know, the reason why we're
> here - - you've heard me explain it, and I don't think I need to repeat it. You know,
> we all have life experiences, and what we want is jurors who don't use something
> they learned outside the courtroom to help them decide what the facts are because, as
> jurors, you're impartial judges of the facts. You're not advocates. You're actually
> judges. You judge what actually happened, and then you apply the law to what
> happened and decide whether or not the District Attorney has proved the case beyond
> a reasonable doubt.
> Do you think you can do that?
> JUROR NO. 12: Yes. Dealing in terms of the law, I can definitely listen to

---

[25] *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc); *see United States v. Plache*, 913 F.2d 1375, 1377 (9th Cir. 1990) ("It is well-settled that a single partial juror deprives a defendant of his Sixth Amendment right to a trial by an impartial jury.").

[26] *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

both sides.

THE COURT: Very good.

(Voir dire reported but not transcribed)

MR. KAM: All right. Ms. (Juror No. 12), good morning. I just want to ask you - - you said you know several people in the room here.

JUROR NO. 12: Yes.

MR. KAM: Have you worked with Mr. McEntee [defense counsel] before?

JUROR NO. 12: No. I've seen him.

MR. KAM: Okay. And I want to ask you, Do you know - - do you know the defendant in this case?

JUROR NO. 12: I've worked with him.

MR. KAM: All right. Do you know any of the members of his family?

JUROR NO. 12: No, I do not.

MR. KAM: All right. So you've never met anyone else from his family?

JUROR NO. 12: I have not seen anyone in his family, to my knowledge.

MR. KAM: Okay.[27]

None of Perry's grounds concerning Juror No. 12 were addressed on the merits by any California court. When there is no reasoned state court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[28] In so doing, because it is not clear that it did not so do, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds.[29] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[30]

---

[27] 3/12/2007 RT, pp. 1-3.

[28] *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 784-85 (2011)

[29] *See Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740; *see also Jimenez*, 458 F.3d at 140 (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[30] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

A trial court's determination on juror bias is entitled to the presumption of correctness because it "involves credibility findings whose basis cannot be easily discerned from an appellate record."[31]  In this case, the trial judge's factual determination that Juror No. 12 could perform her sworn duty with impartiality was adequately supported by the record.[32]  While it is clear that Juror No. 12 stated that she thought she might favor the defendant because she knew him, she nevertheless repeatedly stated that would be fair and consider both sides.

The Ninth Circuit has identified three theories of juror bias: 1) the "*McDonough*-style" bias, which turns on the honesty of a juror's responses on voir dire;[33]  2) "actual" bias, which stems from a pre-set disposition not to decide an issue impartially; and 3) "implied" or "presumptive" bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in the trial.[34] "'Actual bias' is 'bias-in-fact'-the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'"[35]  In addition to showing juror bias, a habeas petitioner must also show prejudice.[36]  However, "[n]o bright line test exists to assist courts in determining whether a petitioner has suffered prejudice from juror misconduct."[37]  Rather,

---

[31]  *Witt*, 469 U.S. at 429.

[32]  *Noltie v. Peterson*, 9 F.3d 802, 806 (9th Cir. 1993) (citing 28 U.S.C. § 2254(d)(8)).

[33]  *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984) (plurality).

[34]  *See Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc), *cert. denied*, 552 U.S. 1314.

[35]  *United States v. Torres*, 128 F.3d 38, 43 (2d. Cir. 1997)

[36]  *Mancuso v. Olivarez*, 292 F.3d 939, 949 (9th Cir. 2002).

[37]  *Id.* at 950.

prejudice exists when the alleged juror misconduct has a substantial and injurious influence on determining the jury's verdict.[38]

Aside from making conclusory allegations, Perry does not support his claims with evidence or that would allow this Court to find that Juror No. 12 was actually biased (ground 6) or implicitly biased (ground 7) against him, or that she did not follow the court's instructions to remain impartial or unbiased (ground 9). Simply put, Perry disagrees with the court's evaluation that Juror No. 12 could remain fair and impartial. This is not sufficient to warrant habeas relief because Perry must make a showing that the alleged misconduct had a substantial and injurious influence on the verdict. In fact, a review of the record clearly indicates that if Juror No. 12 had any bias at all, it would have been, "positive," in favor of the defendant. Perry has not shown that a presumed state court determination denying grounds one, six, seven and nine was contrary to clearly established Supreme Court precedent. Consequently, he is not entitled to relief on his first, sixth, seventh or ninth grounds.

In his fourth ground Perry claims that the trial court violated his right to a fair trial under California Rules of Court, Standard 10.20 by allowing Juror No. 12 to serve. To the extent that Perry raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[39] It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[40] "[A] state court's

---

[38] *See Thompson v. Borg*, 74 F.3d 1571, 1574-76 (9th Cir. 1996)

[39] *Swarthout v. Cooke*, 562 U.S. ___, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[40] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law),

interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."[41]  This principle applied to federal

habeas review of state convictions long before AEDPA.[42]

A petitioner may not transform a state-law issue into a federal one by simply asserting a

violation of due process.[43]  "[The Supreme Court has] long recognized that a mere error of state

law is not a denial of due process."[44]  "[A]bsent a specific constitutional violation, federal habeas

corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as

to make the resulting conviction a denial of due process.'"[45]  "Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension."[46]  Perry's fourth ground presents only an issue of state law—he

---

*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*,
456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not
allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455
(2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[41] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236
(1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has
spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[42] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate
expositors of state law").

[43] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[44] *Cooke*, 562 U.S. at ___, 131 S. Ct. at 863 (internal quotation marks and citations
omitted).

[45] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416
U.S. 637, 643 (1974)).

[46] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455
U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78,
86 (1983) (per curiam).

contends that the California courts misapplied California law.  Thus, Perry's fourth claim is not cognizable by this Court.

<u>Ground 3</u>

In his third ground, Perry claims that the trial court abused its discretion by denying his motion to release the jurors' contact information to him.  Perry raised this issue on direct appeal and the California Court of Appeal rejected it holding that Perry had not made a prima facie showing of juror misconduct and that his motion was based on speculation.[47]

To the extent that Perry is contending that he was entitled to the release of confidential juror information pursuant to state law, such a claim is not cognizable on federal habeas review. Further, to the extent that Perry is purporting to raise a federal due process claim, petitioner has failed to cite, and this Court is unaware of, any United States Supreme Court authority holding that due process requires a defendant be granted confidential jury information based upon the possibility that jurors may have briefly conferred in the presence of alternate jurors. Accordingly, the California courts' rejection of Perry's constitutional claim cannot be said to be contrary to clearly established federal law.[48]

<u>Ground 5</u>

---

[47]  *Perry*, 2009 WL 74346 at *2.

[48]  *See Van Patten*, 552 U.S. at 126 ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (internal quotation marks omitted)); *Musladin*, 549 U.S. 70; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir.) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

In his fifth ground, Perry claims that the jurors violated their admonition not to discuss the case until their deliberations began.  In support of his claim, Perry has submitted an affidavit from Veronica Johnson who stated that she heard "the young black female juror" tell two other jurors on the first day of trial, "I cannot wait to get to deliberations, because boy do I have a story to tell all of you."[49]  Ms. Johnson also said she heard a juror on the second day of trial tell another juror "what a mess this all was, but it's pretty clear what happened, don't you think?"[50]

On direct appeal, the California Court of Appeal reviewed Ms. Johnson's declaration and held that it did not establish a prima facie case of misconduct:

> On appeal, appellant argues the affidavit established a prima facie showing of juror misconduct because it showed juror No. 12 shared an improper story with her fellow jurors and the other juror improperly prejudged the case and discussed it with another juror prior to deliberations. The trial court did not abuse its discretion in concluding appellant failed to make a prima facie showing of misconduct. Juror No. 12's comment indicated an intent to tell a story during deliberations, but appellant's speculation that the story had to do with the juror's prior contact with appellant is insufficient to show good cause for release of juror information. (See People v. Wilson (1996) 43 Cal.App.4th 839, 852 ["defense counsel's request did not show good cause and stated 'at best, speculation on the part of how the jurors might have arrived at their verdict,'"]; People v. Rhodes (1989) 212 Cal.App.3d 541, 554 ["the investigator's statement is too vague and conclusory to constitute an adequate preliminary showing of juror misconduct"].) Moreover, there is no indication that the juror told an improper story during deliberations; six jurors, including juror No. 12, told the defense investigator that no misconduct occurred.
>
> *3 The other juror's comment, " 'what a mess this all was, but it's pretty clear what happened,' " reflects a mental effort to sort through and understand the evidence, but not an improper prejudgment of the case. None of the six jurors interviewed reported that any juror refused to deliberate, and the verdict itself does reflect deliberation. On the other hand, the comment does appear to violate the trial court's admonition not to discuss the case until deliberations. However, a showing that a juror disobeyed the court's instructions in a single instance does not necessarily constitute a prima facie showing of good cause for disclosure of juror information. In People v. Jefflo (1998) 63 Cal.App.4th

---

[49] CT 253.

[50] CT 253.

1314, 1318, the defendant alleged a juror committed misconduct by telling the defendant's girlfriend that the jury was hung. Although the juror may have "disobeyed the court's admonitions and instructions," the court rejected the defendant's claim because he failed to "explain how the juror's conduct was 'of such a character as is likely to have influenced the verdict improperly' (Evid.Code, § 1150, subd. (a))." ( Jefflo, at p. 1322; see also Rhodes, supra, 212 Cal.App.3d at p. 554.) In this case, the affidavit showed only a passing comment in the restroom that did not communicate any particular view as to appellant's guilt or innocence. The trial court did not abuse its discretion in denying appellant's motion.[51]

Because the California Court of Appeal held that the two comments made by the jurors did not constitute misconduct, Perry is only entitled to relief if this decision was contrary to clearly established federal law or constituted an unreasonable application of the facts.  Thus, Perry must not only make a showing of juror misconduct, but he must demonstrate that the misconduct "had substantial and injurious effect or influence in determining the jury's verdict."[52] Perry has not met this burden—he has failed to show that two conversations constituted misconduct, let alone that they prejudiced the verdict.

With respect to the first comment—that Juror No. 12 told a fellow juror that she had a story to tell during deliberation—Perry provides no proof, beyond mere speculation, that Juror No. 12 intended to tell a story concerning her prior contact with Perry.  Claims based on speculation are insufficient to warrant habeas relief.  Even assuming that the story was about Juror No. 12's prior contact with Perry, since he does not know the content of the story, i.e.

---

[51] *People v. Perry*, 2009 WL 74346, *2-*3.  On direct appeal, Perry argued that the trial court erred by denying his motion to release the jurors' contact information so he could interview them regarding possible juror misconduct.  In order to show a prima facie case, Perry submitted Ms. Johnson's declaration.  The California Court of Appeal reviewed Ms. Johnson's declaration and held that it did not establish a prima facie case of juror misconduct.

[52] *Brecht*, 507 U.S. at 621-23.

whether it was a positive story or a negative story, he is unable to demonstrate that it had a

"substantial and injurious effect or influence in determining the jury's verdict."[53]

Perry has also failed to show the other comment—"what a mess this all was, but it's

pretty clear what happened"—had a substantial and injurious affect on the verdict.  The

California Court of Appeal noted that each of six jurors who were interviewed[54] subsequent to

the verdict stated that none of the jurors refused to deliberate and that the verdict itself reflected

deliberation.  Accordingly, the Court of Appeal held that Perry was unable to show that a passing

comment made in the restroom had a substantial and negative effect on the deliberative process

or the verdict.  Perry has not shown that this conclusion is erroneous or contrary to federal law.

While Ms. Johnson's declaration supports the conclusion that one of the jurors likely made a

comment in the restroom, Perry has not submitted any evidence that would allow this Court to

conclude that the jurors refused to deliberate regarding the merits of the case.  Because Perry has

not shown that the comment had a "substantial and injurious effect or influence in determining

the jury's verdict,"[55] he is not entitled to relief on his fifth ground.

<u>Ineffective Assistance of Counsel (Grounds 2, 8)</u>

In his second and eighth grounds Perry contends that his Sixth Amendment right to

counsel was violated because his trial counsel and appellate counsel rendered ineffective

assistance of counsel.  Specifically, Perry contends that his trial counsel should have objected to

the empaneling of Juror No. 12 after she expressed that she would be "positively" biased because

---

[53]  *Id.*

[54]  Although it is not clear from the record, either Perry's attorney or the court
interviewed six jurors concerning the allegations of jury misconduct.

[55]  *Id.*

she had worked with Perry.  He also claims his appellate counsel failed to raise four issues on direct appeal, which he now raises before this Court.[56]

To demonstrate ineffective assistance of counsel, Perry must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[57]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[58]  Perry must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[59]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[60]

---

[56]  Perry does not specify which four issues appellate counsel failed to raise on direct appeal, only that she declined to raise them.

[57] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[58] *Id.*

[59] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[60] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[61]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[62]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[63]

---

[61] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[62] 466 U.S. at 689 (internal citations and quotation marks omitted).

[63] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[64]  Because Perry did not challenge his trial counsel's

representation on direct appeal, this Court must decide the issues *de novo* on the record before

it.[65]  In so doing, because it is not clear that it did not so do, the Court presumes that the state

court decided the claim on the merits and the decision rested on federal grounds.[66]  This Court

gives the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[67]

　　　Perry has failed to show that his trial counsel's decision to not remove Juror No. 12 was

not part of a well-reasoned trial strategy.  As noted above, the judge found that Juror No. 12

could be fair and impartial and Perry has not submitted any evidence that this determination was

erroneous.  Thus, it is entirely possible that Perry's trial counsel agreed with the trial court's

determination that Juror No. 12 would remain fair an impartial.

　　　Perhaps even more relevant is that fact that Juror No. 12 expressed a positive bias in

favor of Perry, since she had previously worked with him.  Thus, Perry's trial counsel could have

made the strategic decision to leave Juror No. 12 on the panel since she might tend to favor

---

[64] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[65] *See Dolphy v. Mantello,* 552 F.3d 236, 239-40 (2d. Cir. 2009) (citing *Spears v. Greiner*,
459 F.3d 200, 203 (2d. Cir. 2006)); *cf. Wiggins*, 539 U.S. at 530-31 (applying a *de novo* standard
to a federal claim not reached by the state court).

[66] *See Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740; *see also Jimenez*, 458 F.3d at
140 (explaining the *Harris-Coleman* interplay); *Fama*, 235 F.3d at 810-11(same).

[67] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary
disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

Perry.  This conclusion is further supported by a statement made by Perry's attorney during a

second *Marsden* hearing, just prior to sentencing:

> The only motion I remember, your honor, talking to Mr. Perry about or at least the
> principal one was a motion for new trial based on answers that a certain juror gave during voir
> dire. . . . I explained to him how voir dire worked, and that we had talked about it and decided to
> accept the juror based on some other factors.  Perry has failed to show that his trial counsel's
> strategy was deficient and he is not entitled to relief on his second ground.[68]

Thus, it is fairly clear from the record that Perry's counsel made a strategic decision to not object

to Juror No. 12.  Such decisions are generally not subject to challenge in a habeas petition.[69]

Perry is not entitled to relief on his second ground.

Perry next claims that his appellate counsel was ineffective for failing to raise four

(unspecified) issues on direct appeal.  The petition must specify all the grounds for relief

available to the petitioner and the facts supporting each ground.[70]  As the Supreme Court has

stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must
> "specify all the grounds for relief available to the petitioner" and "state the facts
> supporting each ground."  See also Advisory Committee's Note on subd. (c) of
> Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently
> contained mere conclusions of law, unsupported by any facts. [But] it is the
> relationship of the facts to the claim asserted that is important . . . ."); Advisory
> Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 (" '[N]otice'
> pleading is not sufficient, for the petition is expected to state facts that point to a
> real possibility of constitutional error." (internal quotation marks omitted)).
> Accordingly, the model form available to aid prisoners in filing their habeas
> petitions instructs in boldface:
>
> **"<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds
> for relief from the conviction or sentence that you challenge.**

---

[68]  Traverse, pp. 49-54.

[69]  *Strickland*, 466 U.S. at 690.

[70]  Rules—Section 2254 Cases, Rule 2(c).

> **And you must state the facts that support each ground. If you
> fail to set forth all the grounds in this petition, you may be
> barred from presenting additional grounds at a later date."**
> Petition for Relief From a Conviction or Sentence By a Person in
> State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P.
> 685 (2000 ed., Supp. V) (emphasis in original).

Perry has not provided sufficient details to place this Court on notice as to which "issues" his

appellate counsel should have raised.  Accordingly, he is not entitled to relief.

Even if Perry did provide this Court with the specified issues he wanted raised on direct

appeal, it is not likely that he would prevail.  As noted above, none of the issues raised in the

Petition have any merit.  The failure of appellate counsel to raise meritless or weak issues does

not constitute ineffective assistance of counsel.[71]  Thus, Perry has failed to show that had his

appeallate counsel raised any of the issues in the Peititon on direct appeal, the result would have

likely been different.  Perry is not entitled to relief on his eighth ground.

---

[71] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does
not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428,
1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not
constitute ineffective counsel).

CONCLUSION AND ORDER

Perry is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[72]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[73]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 5, 2011

                                        /s/ James K. Singleton, Jr.
                                        **JAMES K. SINGLETON, JR.**
                                        United States District Judge

---

[72]  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327)).

[73]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.